UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| AMY VILLARREAL,<br><br>                    Plaintiff,<br>vs.<br><br>JORGE CORREA, *et al.*,<br><br>                    Defendants. | Case No.: 2:22-cv-00815-GMN-DJA<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT** |

Pending before the Court is the Motion for Summary Judgment ("MSJ"), (ECF No. 38), filed by Defendants Jorge Correa and City of North Las Vegas (the "City"). Plaintiff Amy Villarreal filed a Response, (ECF No. 43), and Defendants filed a Reply, (ECF No. 46). Because the Court finds that Correa had probable cause to arrest Plaintiff, the Court GRANTS Defendants' Motion for Summary Judgment.

I.  **BACKGROUND**

This case arises from Plaintiff's discontinued prosecution for an alleged sexual assault. (*See generally* Second Am. Compl. ("SAC"), ECF No. 33). In July 2020, a 16-year-old autistic minor, D.P., and his father, Sergio, reported to the North Las Vegas Police Department ("NLVPD") that the minor had been sexually assaulted on two separate occasions in 2019 by a teacher named "Amy" at his school, Crescent Academy.[1] (*See* Vaquera Report at 4, Ex. A to MSJ, ECF No. 38-1). After the initial interview with Sergio, NLVPD Officer Vaquera interviewed D.P. (*Id.*). D.P. told Officer Vaquera that Amy offered to give him a gift, took him to her car, and then drove them to Nature Discovery Park, which is across the street from Crescent Academy. (*Id.*). D.P. told Officer Vaquera that Amy took his clothes off, including

---

[1] Crescent Academy is a therapy center for individuals diagnosed with autism but is referred to as a "school" in the briefing. (SAC ¶ 12).

his underwear, Amy was fully naked, and she gave D.P. a condom to put on. (*Id.*). D.P. stated that Amy sexually assaulted him on two separate occasions. (*Id.*).

Defendant Correa, a retired Special Victims Unit Detective, was then assigned to the case and scheduled a forensic interview with D.P. for January 2021, but neither D.P. nor Sergio appeared at the interview. (Correa Report at 7, Ex. D to MSJ, ECF No. 38-4). The forensic interview was rescheduled for June 2021 to be conducted by Forensic Interviewer Elizabeth Espinoza. (*Id.*). During this interview, D.P. provided information and details about the sexual assaults. (*Id.*). He identified Amy as the woman who sexually assaulted him and said it occurred at a park, in her grey mustang that was messy and had black seats. (*See generally* Forensic Interview Tr., Ex. E to MSJ, ECF No. 38-5). He also told Espinoza that he and Amy went to a coffee shop before going to the park. (*Id.* 15:642–64). D.P. stated that he was sexually assaulted at the park. (*Id.* 16:703–17:725). D.P. first explained that this happened inside the car, and that she sat on his lap. (*Id.* 18:767–19:816). But later, he said both that he was standing, and that he was sitting in the front of the car. (*Id.*). D.P. stated that Amy put tape over his mouth and told him that she needed kids. (*Id.* 19:818–42, 30:1311–22.). D.P. told Espinoza that Amy sexually assaulted him on two separate occasions, both at the park, but one time in the car and the other on the grass. (*Id.* 36:1602–37:21).

After the forensic interview, Correa spoke with D.P.'s therapists at Bridge Counseling Services, Clarissa Moreno and Milagros Severin-Ruiz. (Correa Report at 10, Ex. D to MSJ). Clarissa informed Correa that D.P. is diagnosed with autism and Post Traumatic Stress Disorder ("PTSD"). (*Id.*). Milagros told Correa that during one of D.P.'s sessions just a few days after the forensic interview, he talked about the alleged sexual assault. (*Id.*). D.P. provided details about at least one of the sexual assaults, which deviated from his forensic interview testimony. (*Id.*). For example, he told Milagros that Amy took him straight to the park, while he told Espinoza that they first went to get coffee. (*Id.*). Milagros told Correa that

while D.P. was talking about the incident, he was shaking and emotionally reactive, which showed signs and symptoms of PTSD from the sexual assault. (*Id.*).

Correa then drove to Crescent Academy to identify Amy but was told that Crescent Academy CEO and Director, Dr. Michael Hobbs, was the only person who could provide that information, and that he was not there. (*Id.* at 11). Correa spoke with Dr. Hobbs a few weeks later, and Dr. Hobbs identified the Plaintiff, Amy Villarreal, as a former employee. (*Id.*). Correa provided D.P.'s description of Amy, and Dr. Hobbs indicated only that Crescent Academy's employee named Amy did not have glasses or long hair. (*Id.*). Dr. Hobbs confirmed that Amy's employment and D.P.'s attendance overlapped from January to August 2019. (*Id.*). Dr. Hobbs told Correa that in the past, on several occasions, D.P. had become infatuated with female staff members, and that D.P. had been told this was not appropriate because of the teacher/patient relationship and the age difference. (*Id.*). Dr. Hobbs confirmed that there was a park across the street from the school where the staff would take the children, and that they usually just walk to the park. (*Id.*). He stated that there was no reason for a staff member to transport a child in their personal vehicle. (*Id.*).

Correa called Plaintiff in August 2021 to tell her that he was investigating a case that took place when she was working at Crescent Academy and asked to meet with her. (*Id.*). A month later, Correa interviewed Plaintiff at the police station. (*Id.*). Correa explained the accusations that D.P. had asserted against Plaintiff, and Plaintiff initially did not deny any wrongdoing, remained calm, and even laughed during parts of the interview. (*Id.*); (*see generally* Villarreal Interview Tr., Ex. F to MSJ, ECF No. 38-6). Plaintiff later denied the accusations repeatedly. (Villarreal Interview Tr. CNLV1203:478–482, CNLV1205:544–546, Ex. F to MSJ). At the conclusion of the interview, Correa arrested Plaintiff. (*See* Decl. of Arrest, Ex. G to MSJ, ECF No. 38-7).

After the arrest, the prosecution engaged in discussions with Plaintiff's criminal defense attorney to see if she would be willing to enter a guilty plea on a lesser charge. (Geller Dep. 91:6–23, Ex. P to Resp., ECF No. 43-16).  Plaintiff maintained her innocence and never considered entering a guilty plea, even if the charges would be reduced to a misdemeanor. (*Id.* 92:10–93:16).  The charges were eventually dismissed by the prosecution in March 2022 before a preliminary hearing, at which the prosecution would have been required to seek and obtain a probable cause finding by a judge. (*Id.* 143:6–144:6, 146:2–5).

Plaintiff brings three federal claims against Defendant Correa: false arrest, unlawful detention, and malicious prosecution. (*See generally* SAC).  Plaintiff also brings two state law claims against both Defendants for malicious prosecution and false arrest/illegal seizure. (*Id.*).  Lastly, Plaintiff brings a state law indemnification claim against Defendant City. (*Id.*).

## II.   LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*  "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)).  "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008).  A principal purpose of summary judgment is "to

isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citation and quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied, and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). However, the nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404,

1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts," *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252. In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III. DISCUSSION

Defendants move for summary judgment on all of Plaintiff's claims. The central question here is whether Correa had probable cause to arrest Plaintiff. If it is determined that Correa indeed had probable cause to arrest Plaintiff, then summary judgment must be granted to Defendants on all of Plaintiff's claims.[2]

### A. Probable Cause to Arrest

Plaintiff's federal law claims arise under 42 U.S.C. § 1983 and the Fourth Amendment. To sustain an action under section 1983, a plaintiff must show: "(1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a federal constitutional or statutory right." *Wood v. Ostrander*, 879 F.2d 583, 587 (9th Cir. 1989). A person deprives another "of a constitutional right, within

---

[2] *See supra* section III.B.

the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains]." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). The statute requires a connection between the defendant's actions and the deprivation plaintiff alleges to have suffered. *See generally Monell v. Department of Social Servs. of City of New York*, 436 U.S. 658 (1978).

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Because arrests are "seizures" of "persons," they must be reasonable under the circumstances. *See Payton v. New York,* 445 U.S. 573, 585 (1980). An arrest is reasonable if supported by probable cause. *See generally Beck v. Ohio*, 379 U.S. 89 (1964). "Probable cause exists when the police know 'reasonably trustworthy information sufficient to warrant a prudent person in believing that the accused had committed or was committing an offense.'" *United States v. Del Vizo*, 918 F.2d 821, 825 (9th Cir. 1990) (quoting *United States v. Delgadillo–Velasquez*, 856 F.2d 1292, 1296 (9th Cir. 1988)). Moreover, the Supreme Court has held that probable cause is "not a high bar" and depends on the "totality of the circumstances." *See District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018). Law enforcement officers may draw upon their experience and expertise in determining the existence of probable cause. *See United States v. Hoyos*, 892 F.2d 1387, 1392 (9th Cir. 1989), *cert. denied*, 498 U.S. 825 (1990).

Correa asserts that he had probable cause to arrest Plaintiff because "under the totality of the circumstances known to Correa, and based on his experiences, a prudent person in his shoes would have concluded that there was a fair probability that Plaintiff had committed a crime against D.P." (MSJ 17:18–21). Correa points to several pieces of evidence to support his argument. First, despite D.P.'s age and communication limitations due to autism, he was able

to provide specific information regarding Plaintiff's alleged sexual assault against him, including that a teacher from D.P.'s school named "Amy" took D.P. from school and had intercourse with D.P. at a park near the school, which they had driven to in Amy's gray Mustang. (MSJ 17:21–25); (Vaquera Report at 3–4, Ex. A. to MSJ); (Forensic Interview Tr. 11:454–472, 11:488–12:504, 12:510–524, 13:542–568, 3:578–14:612, Ex. E to MSJ).  D.P. identified the teacher who allegedly sexually assaulted him as "Amy," a Hispanic female approximately 5'5"-5'10" inches tall, with long, dark hair, which matches Plaintiff's description. (Vaquera Report at 4, Ex. A. to MSJ); (Forensic Interview Tr. 16:687–701, Ex. E to MSJ).  The Nature Discovery Park is across from Crescent Academy and the staff would take students to the park regularly. (Reply 5:4–5); (*see* Correa Report at 10, Ex. D to MSJ). Plaintiff was a registered behavioral technician at Crescent Academy, and her employment overlapped with D.P.'s attendance from January to August 2019, during which time Correa asserts that she would have had access to D.P. (MSJ 18:9–11); (Villarreal Interview Tr. CNLV1192:148–49, Ex. F to MSJ).  Moreover, Correa contends that he further based probable cause off his presumption that Plaintiff would know D.P.'s schedule, where other staff members would be at a given time, and other details that would provide her the opportunity to have access to D.P. at the school. (MSJ 18:12–15).

      Correa also argues that Plaintiff's interview responses and behavior further evidence that probable cause existed.  For example, Correa called Plaintiff in August 2021, told her he was investigating a case that took place when she was working at Crescent Academy, and asked to meet with her. (Correa Report at 11, Ex. D to MSJ).  Correa found it odd that Plaintiff did not ask what type of incident he was investigating, because this was usually the first question people asked him when he indicated he wanted to speak to them. (*Id.*).

      Further, during Plaintiff's interview, she appeared to agree with many of Correa's statements by responding "okay" or "yeah" and failed to deny many of his allegations. (*See*

*generally* Villarreal Interview Tr., Ex. F to MSJ). For instance, when Correa first told Plaintiff that D.P. reported that she sexually assaulted him, she did not deny it or otherwise react strongly. (*See* Correa Report at 11–12, Ex. D to MSJ); (Villarreal Interview Tr. CNLV1200:399–417, Ex. F to MSJ). Correa's Report describes Plaintiff's general demeanor during the interview as "calm" and explains that "she did not act surprised or upset about the allegation." (Correa Report at 12, Ex. D to MSJ). Plaintiff even laughed during parts of the interview when told about the allegations. (*Id.*); (*see* Villarreal Interview Tr. CNLV1202:438–444. Ex. F to MSJ). Correa contends that because Plaintiff's answers were not overall exculpatory, he further felt justified finding probable cause. (Reply 5:15–17). Moreover, Correa testified that, based on his experience, including approximately 13 years as a detective, cases involving sexual assaults against minors do not always make "perfect sense" or sound "perfectly plausible," but when the details of their assaults come to light, their prior statements make sense. (*See* Correa Dep. 44:2–3, 68:10–69:9, 74:18–76:11, 245:22–247:1, Ex. C to MSJ, ECF No. 38-3). The Court agrees with Correa that the above pieces of evidence justify a finding of probable cause because he had reasonably trustworthy information sufficient to warrant a prudent person believing that Plaintiff had committed an offense. Thus, Correa has met his initial burden of negating an essential element of Plaintiff's claims, *i.e.*, that he had probable cause to arrest Plaintiff.

        The Court now turns to whether Plaintiff put forth evidence to establish that a genuine issue of material fact exists. Plaintiff argues that there are many reasons why probable cause never existed. (Resp. 20:1–12, ECF No. 43). First, Plaintiff asserts that Correa did not have probable cause to arrest Plaintiff due to D.P.'s incoherent account of events. (*Id.* 20:4). Plaintiff supports this argument by pointing out that D.P.'s father initiated the investigation by bringing D.P. to the police station, submitting a written statement, and providing details to officers before the officers spoke to D.P. (*Id.* 20:17–19). Plaintiff next argues that the use of

leading questions during D.P.'s interviews further establishes the lack of a coherent account of events. (*Id.* 20:20–25). Plaintiff then argues that the forensic interview failed to provide a coherent account of the events because D.P. did not demonstrate his understanding of the difference between the truth and a lie. (Resp. 20:26–21:4). When asked if he promised to "only tell [the interviewer] things that are true and real," he responded with "I think so." (Forensic Interview 6:238–41, Ex. E to MSJ).

      To begin, D.P. is a minor, thus it is understandable that his parent initiated the police report instead of himself. Next, while Officer Vaquera did ask D.P. some leading questions in the initial interview, D.P. provided Officer Vaquera with information consistent with D.P.'s father's statements. (*See generally* Vaquera Report, Ex. A to MSJ). Moreover, Correa contends that he did not watch the body camera footage of Officer Vaquera's interview with D.P. and his father, and instead conducted his own investigation, including a forensic interview. (Add'l Correa Dep. 34:5–8; 161:12–15, Ex. N to Reply, ECF No. 46-2). Furthermore, D.P.'s autism causes him to have both cognitive and speech limitations, so D.P.'s response of "I think so" when asked if he would only tell Forensic Interviewer Espinoza the truth, does not necessarily mean D.P. does not understand the difference between the truth and a lie. Defendant points out, and the Court agrees, that Plaintiff cites no case law supporting her contention that police officers cannot rely on statements by individuals with cognitive or communication limitations in making a probable cause determination. (Reply 6:25–28). Thus, the Court is unpersuaded by Plaintiff's initial argument.

      The remainder of Plaintiff's arguments are more persuasive to the Court, but still do not establish that a genuine dispute of material facts exists in this case. Plaintiff argues that the allegations are implausible and do not fit the pattern for this type of crime. (Resp. 20:5, 20:10). Plaintiff contends that it is implausible that "a 27-year-old behavioral therapist with no criminal or disciplinary history and no complaints of inappropriate conduct walks a 15-year-old patient

out of the school where she works, somehow bypassing the school's security systems, and lures him to her car, presumably in the school parking lot." (*Id.* 21:13–16). The Crescent Academy CEO acknowledges that this would be impossible to accomplish due to video cameras in the school. (Hobbs Decl. ¶ 6, Ex. 4 to Resp., ECF No. 43-4). Correa testifies that D.P.'s allegations "fit the pattern" of these crimes "[b]ecause it was done in a way that nobody saw . . . [o]bviously it was secretive because there were no witnesses. There was nobody that could testify to it." (Correa Dep. 248:21–23, Ex. C to MSJ). But Plaintiff argues that this alleged crime would have had witnesses and D.P.'s absence at school would not have gone unnoticed. (Resp. 23:21, 23:24).

Then, Plaintiff contends that the numerous material inconsistencies and a lack of corroboration establish the absence of probable cause. (*Id.* 20:6, 20:9). Plaintiff draws the Court's attention to several examples. For instance, according to D.P.'s statements in July 2020, Plaintiff drove D.P. from the school to the park. (Correa Report at 5, Ex. D to MSJ). The following June, however–nearly two years after the alleged assaults–D.P. claims for the first time that Amy took him for coffee, where they talked, before she took him to the park, removed their clothes, and had sexual intercourse with him both in her car and on the grass. (*See generally* Forensic Interview Tr., Ex. E to MSJ). D.P. contradictorily claims in his forensic interview that the park was in front of the school and far away from the school. (*Id.*). At various points in the forensic interview, D.P. describes several different sexual activities and positions, all of which, he says, took place in the front seat of Plaintiff's Mustang, while he was standing. (*Id.* 18:767–19:816). But later he says it occurred while he was sitting. (*Id.*). D.P. also alleged to his father that his hands were tied up, told an NLVPD officer that he was not tied up, and then tells Forensic Interviewer Espinoza that his hands and feet were both tied up. (*See* Sergio Witness Statement at 2, Ex. B to MSJ, EXF No. 38-2); (Correa Dep. 127:5–15, Ex. 1 to Resp., ECF No. 43-1); (Forensic Interview Tr. 19:818–42, Ex. E to MSJ).

But there are also examples of consistency and corroboration. D.P. described Plaintiff's car by not only correctly identifying its color, but also by accurately describing its interior—black and messy. (*See generally* Car Photographs, Ex. I to MSJ, ECF No. 38-9). Moreover, D.P.'s counselor reported that he brought up the assault during one of his counseling sessions and was shaking and emotionally reactive while recounting the incident. (Correa Report at 10, Ex. D to MSJ). D.P.'s counselor believed he exhibits signs and symptoms of PTSD which would tend to corroborate D.P.'s allegations of sexual assault. (*Id.*). Correa considered these symptoms when determining whether he had probable cause to arrest. (*Id.*). Moreover, Defendant points out, and the Court agrees, that Plaintiff cites no case law supporting her contention that police officers may can only rely on clear, concise narratives that do not change in any way. (Reply 6:25–28). So, while the details were slightly inconsistent at times over the two years between the alleged assault and Plaintiff's arrest, the overarching allegation, and most of the larger details, remained consistent.

Next, Plaintiff asserts that D.P.'s documented history of telling false stories, particularly about his interactions with women, and his infatuation with female staff members at Crescent Academy, further establishes that Correa lacked probable cause. (Resp. 20:7–9). Plaintiff argues that this provides motive and context behind D.P.'s allegations and that much of this exculpatory information was omitted from Correa's report. (*Id.* 26:1–3). But Correa's report included the fact that D.P. told stories about his interactions with women in the past, and Correa considered it when determining whether he had probable cause to arrest Plaintiff. (Correa Report at 10, Ex. D to MSJ). While the Court acknowledges that this accusation complicates the probable cause analysis, based on a totality of the circumstances, Correa still could have found probable cause even after considering this wrinkle. And lastly, Plaintiff asserts that exculpatory evidence—like D.P.'s history of stories about his interactions with women and Plaintiff's eventual denial of the allegations against her—from her interview with Correa

establishes a lack of probable cause. (Resp. 20:11).  But the fact that Plaintiff eventually denied any wrongdoing, does not negate probable cause. *See Cameron v. Craig*, 713 F.3d 1012, 1019 (9th Cir. 2013) ("The fact that a suspect denies an essential element of a crime does not automatically negate probable cause.").

Thus, Plaintiff has failed to meet her burden of establishing that a genuine dispute of material fact exists as to whether Correa had probable cause to arrest her.  Indeed, because probable cause is not a high bar and based on the totality of the circumstances, probable cause existed.

### B. Plaintiff's Causes of Action

Plaintiff's causes of action fail to survive the summary judgment stage because a finding of probable cause defeats them.  Plaintiff brings a section 1983 claim for false arrest, unlawful detention, and malicious prosecution.  She also brings state law claims for malicious prosecution and false arrest/illegal seizure.  Plaintiff further brings an indemnification claim against Defendant City of North Las Vegas, which is not cognizable because NRS 41.039 requires Defendant City to indemnify Defendant Correa is this action.

"A claim for unlawful arrest is cognizable under section 1983 as a violation of the Fourth Amendment only where the arrest was without probable cause or other justification." *Dubner v. City & Cnty. of S.F.*, 266 F.3d 959, 964 (9th Cir. 2001).  Similarly, to succeed on a section 1983 claim for an unlawful detention, the plaintiff "must show that the police had no probable cause to detain him in violation of the Fourth Amendment." *Smith v. Dockery*, No. 2:20-cv-02261-CDS-BNW, 2023 WL 2434817, at *3 (D. Nev. Mar. 9,2023) (citing *Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998)).  Moreover, to succeed on a claim for malicious prosecution under section 1983, a plaintiff must show that defendants prosecuted her "with malice and without probable cause, and that they did so for the purpose of denying [her] equal protection or another specific constitutional right." *Awabdy v. City of Adelanto*, 368

F.3d 1062, 1066 (9th Cir. 2004) (citation omitted).  As for Plaintiff's state law claims, a finding of probable cause necessarily defeats a state malicious prosecution and false arrest/illegal seizure claim.[3] *Engel v. United States*, 702 F. Supp. 3d 986 (D. Nev. 2023) ("Under Nevada law, claims for malicious prosecution, false arrest, and false imprisonment require plaintiff to show that defendants lacked probable cause.").

Thus, all of Plaintiff's claims fail to survive summary judgment.  Accordingly, Defendants' Motion for Summary Judgment is GRANTED.

## IV.   CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment, (ECF No. 38), is **GRANTED.**

The Clerk of Court is kindly directed to close the case.

**DATED** this __3__ day of March, 2025.

_____
Gloria M. Navarro, District Judge
United States District Court

---

[3] In their Motion for Summary Judgment, Defendants failed to specifically reference the Nevada Constitution claim that Plaintiff added to her Second Amended Complaint. (*See generally* MSJ).  Plaintiff argues that because Defendants failed to address this claim, they have waived any argument for summary judgment on it. (Resp. 29:17–23).  While this may be true, there is no prejudice to the Parties if the Court rules on this claim, and it is in the interest of judicial economy for the Court to do so because this claim is based on the exact same facts and conduct as alleged under Plaintiff's other causes of action.